## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TORINA A. COLLIS,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Civil No. RWT  05-3066** |
| | * | |
| | * | |
| **UNITED STATES, et al.,** | * | |
| | * | |
| Defendants | * | |
| | ***** | |

## MEMORANDUM OPINION

On November 10, 2005, Plaintiff Torina Collis ("Collis") filed suit against the United States of America, the Federal Bureau of Investigation ("FBI"), FBI Special Agent Desiree Skinner Smith ("SA Smith")[1] and Assistant United States Attorney Gina Simms ("AUSA Simms"), seeking damages for allegedly false and malicious testimony about plaintiff provided by Smith to a grand jury, which resulted in her indictment. Collis asserts that the actions by the various defendants amount to violations of her Fourth Amendment right to be "free from seizure without probable cause" and her Fifth Amendment Due Process rights. Though Collis originally proceeded *pro se*, she obtained counsel and filed an amended complaint on May 10, 2006.

Before the Court are two motions to dismiss Plaintiff's amended complaint. The first is filed

---

[1] SA Smith has changed her last name since the time of the challenged conduct, from "Skinner" to "Smith."

by the United States and the FBI, alleging lack of jurisdiction.[2]  See Paper No. 17.  The second

motion was filed by Defendants Simms and Smith, and seeks dismissal because of absolute, or in

the alternative, qualified immunity.  See Paper No. 18.  The Court conducted a hearing on these

motions on March 23, 2007.  Because the Court concludes that AUSA Simms is entitled to absolute

immunity, and SA Smith is entitled to absolute immunity, or in the alternative, qualified immunity,

the Court will, by separate order, grant the Defendants' motions, and direct the entry of judgment

in their favor.

## I.

The events in this case arise from Collis' employment with mortgage broker WMS, Inc.

("WMS"). Collis was employed by WMS from December 1996 through December, 1999.  On April

5, 2000, and again on September 20, 2000, a grand jury issued subpoenas to WMS.  AUSA Simms

and SA Smith interviewed Collis on March 14, 2001, when she no longer worked for WMS.  The

notes from this interview ("Form 302") were presented to the Court at the March 23, 2007 hearing.

As stated in the Form 302, Collis informed SA Smith and AUSA Simms that:

> she was told to audit files, which consisted of purging the files, or throw out
> information in the files. For files that were missing information that was supposed
> to be in them, she was told by [a co-defendant] to make up the documents. Such
> documents included 'good faith estimates.' The 'good faith estimate' is supposed to
> be in the file within three days. She was also told to destroy documents such as pay
> stubs, W-2's, bank statements and sales contracts (all documents provided by the
> buyer) by [co-defendant].   She was told to keep the typed application, brokers
> agreement, handwritten application, credit report, appraisal disclosure, request for
> transcript of tax form and all the disclosures. [Co-defendant] said they were purging
> the files because the files were so large and they wanted to thin them.

---

[2] In her response to the Defendants' motions, the Plaintiff conceded that she cannot maintain an
action against the United States of America or the FBI, as there has been no waiver of sovereign
immunity. See Paper No. 20.  Accordingly, the motion of the United States and the FBI [Paper No. 17]
will be granted. Thus, this opinion focuses only on the motion to dismiss by Defendants Simms and Smith
[Paper No.18].

The Form 302 also reflects Collis' involvement in making loans to buyers. "She was told by [co-defendant] not to fill out the 'details of transaction' portion of the loan application.'. . . You are not supposed to be both the processor and the originator on a loan, however she did both." Plaintiff's Exhibit 1: 2-4.

Over two years later, on May 28, 2003, AUSA Simms presented evidence to a grand jury that included the testimony of SA Smith.  At the March 23, 2007 hearing in this Court, the Plaintiff presented to the Court without objection a brief excerpt of the grand jury transcript for May 28, 2003 that was alleged to be false and malicious.  See Plaintiff's Hearing Exhibit 2.  The brief excerpt produced for the Court contains the following conversation:

> A JUROR: Torina Collis. Did you tell us that she said that the files had been purged or that...
> THE WITNESS: No, she told us herself that they had been purged.
> A JUROR: And these were files that were under subpoena?
> THE WITNESS: Correct.
> A JUROR: Is that – isn't that against the law?
> MS. SIMMS: Well, if you want to ask this witness a question, a factual question she can answer.
> A JUROR: Well, no, that's okay. I just wanted to make sure they were under subpoena.
> THE WITNESS: Mm-hmm.

The Court was not provided with, and the Plaintiff has not presented, either at the hearing or in its papers, any additional testimony by SA Smith. However, it is the above-quoted colloquy, between a grand juror and Smith that forms the basis for Collis' complaint.

Based on the evidence presented to it, which consisted of SA Smith's testimony as well as the testimony of other witnesses presented to it over the number of occasions on which it met, the grand jury indicted Collis on June 25, 2004.  She was subsequently arrested by HUD agents, hand-cuffed and taken into custody.  Collis was scheduled to go to trial on November 30, 2004, but the Government moved to dismiss the indictment and superseding indictment as to Collis on November

24, 2004. The Court approved this request on November 29, 2004.[3]

## II.

A motion to dismiss [4] ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 76 S.Ct. 99, 102 (1957).  In its determination, the Court must consider all well-pled allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999).  The Court need not, however, accept unsupported legal conclusions, District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979), or legal conclusions couched as factual allegations.  Papasan v. Allain, 478 U.S. 265, 286 (1986).  As a general rule, Courts should not consider extrinsic evidence at the 12(b)(6) stage, but the Court may consider a document that a party attaches to a motion to dismiss if "it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." American Chiropractic Assoc., Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)(citing Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)).  Accordingly, the Court may properly consider the Form 302 and the excerpt of the grand jury testimony at issue, which were presented without objection at the March 23, 2007 hearing.

---

[3]Collis filed a handwritten Motion to Dismiss and a Motion for Prosecutorial Misconduct and Vindictiveness, which were denied as moot by Judge Williams because the case had already been dismissed.  United States of America v. Bryant et al., AW 03-cr-302, Paper Nos. 151, 152 & 155.

[4]At the hearing, counsel for the Government implied that the Motion as to the Defendants Simms and Smith had been styled as a motion to dismiss, or in the alternative, for summary judgment, however, the pleadings do not mention summary judgment.  Transcript 24:6-8.  Accordingly, the Court applies the Rule 12(b)(6) standard to this motion.

**III.**

Although it contains only two counts, Collis' complaint asserts four claims: (1) a Fourth Amendment claim against AUSA Simms, (2) a Fifth Amendment Due Process Claim against AUSA Simms, (3) a Fourth Amendment Claim against SA Smith, and (4) a Fifth Amendment Due Process Claim against SA Smith.  Because the Defendants have raised immunity defenses that would bar both Fourth and Fifth Amendment claims, the claims against each defendant are analyzed concurrently.  The claims against AUSA Simms will be addressed first.

It is not clear whether the Plaintiff challenges solely AUSA Simms' conduct at the grand jury proceeding, including her statements to the grand jury and the answers to a juror's questions by SA Smith, or whether the Plaintiff challenges the conduct of AUSA Simms prior to that time.[5]  For simplicity's sake, the Court will analyze Simms' conduct in two parts: (1) conduct that transpired

---

[5]At the March 23, 2007 hearing, the following discussion took place:

THE COURT: The thing that harmed your client, if I credit everything in this complaint, is the false testimony to the grand jury that resulted . . . arguably resulted in the indictment of the client. So isn't the harm in this case the knowingly false testimony before the grand jury that therefore produced a grand jury indictment of your client?

MR. FULLER: In a sequential sense, Your Honor is correct.

Later, the Court clarified the Plaintiff's position on the alleged misconduct by AUSA Simms:

THE COURT: So, if I understand your position then, it is that – speaking now of Ms. Simms - she was acting in an investigatory capacity when she was present during the FBI agent's interview that's reflected in the FBI Form 302, and that the Form 302 accurately reflects what she told the agent, but that sometime between the time of this interview . . . which I believe is dated March 14, 2001 . . . and the time that the agent and the Assistant United States attorney appeared before the grand jury, a decision was made to try and prosecute wrongfully your client, and that that decision was made when the prosecutor was only acting in an investigatory role, and that while there may be immunity relating to the actual appearance before the grand jury, your contention is that obviously somebody shifted gears during their investigatory phase of this case and decided to, on the basis of inadequate investigation, pursue charges that [were] wrong. Is that right?

MR. FULLER: Yes, Your Honor.

Transcript 15:16-25; 18:25; 19:1-21.

during the grand jury proceedings, and (2) conduct that took place prior to the grand jury.

The Court could infer from its colloquy with Plaintiff's counsel that Plaintiff has in fact waived her argument with respect to AUSA Simms' conduct at the grand jury proceedings. See supra note 5; see also Transcript 13:15-25. Assuming that Collis did not intend to waive this argument, however, the result is the same.  It is well-settled law that a prosecutor is entitled to absolute immunity for her conduct that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Simms' acts of presenting evidence to the grand jury clearly fall within those acts "intimately associated" with Simms' role as an advocate for the Government. Id.; Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Anthony v. Baker, 955 F.2d 1395, 1400 (10th Cir. 1992).  Further, the facts of this case bear striking resemblance to Lyles v. Sparks, 79 F.3d 372 (4th Cir.1996), a case in which the Fourth Circuit concluded that an AUSA was entitled to absolute immunity where he was alleged to have presented perjured testimony to a grand jury. Id. at 377.  The Court therefore concludes that any challenge to Simms' conduct at the grand jury is barred by absolute immunity.  Imbler, 424 U.S. at 431; Lyles, 79 F.3d at 377.

The second set of Simms' challenged actions are those acts that took place sometime after she interviewed Ms. Collis, but before she stepped into the grand jury room.  The amended complaint is silent as to any actions by AUSA Simms between March 23, 2001 and May 28, 2003. Regardless of where the activities took place, the right to immunity is determined by examining "the nature of the function performed, not the identity of the actor who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997).  At argument, Collis was unable to articulate the exact conduct that transpired, stating only that, "something happened between the interview and the appearance at the

grand jury . . . [w]e believe the three interviewers concocted the story that they presented to the grand jury . . . [w]e don't have evidence of what it was, but this lie is [sic] did not spring naturally from Ms. [Smith]." Transcript 14:14-20; 15:2-5. It is the facts alleged in a complaint (here none regarding the time period in question) that must be examined in deciding a motion to dismiss, not suspicions advanced in oral argument of a "concoction."

Plaintiff argues that under <u>Buckley</u>, these actions are entitled only to qualified immunity because they are administrative or investigative in nature. 509 U.S. at 275-76.  However, the Court finds <u>Buckley</u> inapposite here.  In <u>Buckley</u>, the Supreme Court held that a prosecutor was entitled to only qualified, rather than absolute, immunity for "endeavoring to determine whether a bootprint at the scene of the crime had been made by petitioner's foot," and for the statements the prosecutor made to the press about the case. <u>Id.</u> at 274, 276.  Such actions are a far cry from the allegations against AUSA Simms.  Nowhere is it alleged that Simms was involved with the taking of evidence at the crime scene, as alleged in <u>Buckley</u>, nor is Simms alleged to have given false statements to the press.  Rather, Collis charges Simms' unspecified conduct *after the interview with Collis*.  To the Court, whatever may have transpired after Simms and Smith interviewed Collis  falls squarely within the conduct expressly immunized by the Supreme Court in <u>Buckley</u> and its progeny, consistent with the <u>Imbler</u> decision. <u>Kalina</u>, 522 U.S. at 126 ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of her role as advocate for the [Government] are entitled to the protections of absolute immunity"); <u>Buckley</u>, 509 U.S. at 273 ("[w]e have not retreated . . . from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute

immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial *or before a grand jury* after a decision to seek an indictment has been made")(emphasis added).[6]

Thus, even taking Collis' verbal allegations of a "concoction" as true, the Court finds that Simms' pre-grand jury actions are also entitled to absolute immunity. Because Simms is entitled to absolute immunity, the claims against her must be dismissed and the Court will, by separate order, grant the motion as to Defendant Simms.

## IV.

Collis' remaining claims challenge SA Smith's conduct under both the Fourth and Fifth Amendments. Based on the facts alleged in the complaint, the Court concludes that SA Smith simply did not violate Collis' constitutional rights. Although Collis alluded to an alleged conspiracy at the March 23, 2007 hearing, in her pleadings she makes no such allegations, and thus they may not be considered when acting on a motion to dismiss. The main conduct that Collis challenges is the allegedly "false, malicious testimony" to the grand jury that, she claims, resulted in her indictment and later arrest, as presented at the March 23, 2007 hearing. See Amended Complaint at ¶ 17, 19; Plaintiff's Exhibit 2.

On its face, SA Smith's answers to the grand juror's questions do not constitute "false and malicious testimony." SA Smith responded truthfully, supported by the information contained in Form 302, that Collis had destroyed documents. Whether the documents she destroyed were under

---

[6] A district court in a sister circuit has made a similar distinction between investigation and advocacy. Bragdon v. Malone, 425 F. Supp. 2d 1, 4 (D.D.C. 2006)("note the Buckley Court's stress upon the difference between 'the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand'")(quoting Buckley, 509 U.S. at 274).

subpoena does not appear to the Court to be particularly relevant given the fact that Collis was indicted for her involvement in an alleged scheme to defraud involving home loans and wire transfers, not obstruction of justice or interference with the Government's investigation.[7]  Without further explanation of how these statements were false and malicious, the Court concludes that Collis' Fifth Amendment right to Due Process simply was *not* violated.

Similarly, SA Smith did not violate Collis' Fourth Amendment rights.  The Supreme Court has held that the Fourth Amendment requirement that "no warrants shall issue, but upon probable cause, supported by oath or affirmation" may be satisfied by an indictment returned by a grand jury. U.S. Const. Amend IV; Kalina v. Fletcher, 522 U.S. 118, 129 (1997).  In this case it is undisputed that the grand jury returned an indictment (twice) against Collis, and that Collis was subsequently prosecuted based on these indictments.  See Amended Complaint at ¶13.  It is quite likely that the grand jury relied upon evidence other than SA Smith's testimony to decide to indict Collis.[8]  Collis

---

[7]The superseding indictment explains the charges in greater detail.  Essentially, Collis and her co-defendants were charged with conspiring and devising a scheme to obtain money and property by means of false and fraudulent pretenses. The scheme involved falsifying documents used to obtain home loans (i.e., the documents provided by prospective buyers such as pay stubs and W-2's), appraisals, closing documents and other documents required by mortgage lenders. The superseding indictment further lists eight properties that were allegedly part of the scheme for which Collis was the loan originator.  The superseding indictment further alleged that Collis transferred over $200,000 in wire transfers to facilitate home loans that were alleged to have been fraudulent. See Superseding Indictment, July 28, 2004, No. 123, Criminal Case No. AW 03-302.

[8]At the March 23, 2007 hearing, the Court pressed Plaintiff's counsel on this issue, and he provided an inconclusive answer:

> THE COURT: How do I know that there was not other evidence presented to the grand jury which would have supported independently a finding of probable cause to indict?

> MR. FULLER: As we stand here today, Your Honor, you don't.

Transcript 22:15-20.

did not allege in her complaint that SA Smith was the sole witness that appeared before the grand

jury.  In fact, at the March 23, 2007 hearing, Plaintiff's counsel indicated just the opposite.[9]

Applying <u>Kalina</u>, once the grand jury indictments were returned, the procedural requirements of the

Fourth Amendment were satisfied.  <u>Id</u>.

In the alternative, even assuming that, but for SA Smith's allegedly false statements, the

grand jury would not have indicted her (a view that the Court finds highly unlikely given the Form

302 and the excerpt from the grand jury proceedings that were presented at the March 23, 2007

hearing, as well as the fact that the grand jury indicted Collis not just once, but a second time under

a superseding indictment), the Court concludes that SA Smith is entitled to absolute immunity.

At common law, witnesses were entitled to absolute immunity. <u>Briscoe v. LaHue</u>, 460 U.S.

325, 345 (1983).  This absolute immunity extends to Government witnesses testifying before a grand

jury. <u>Lyles v. Sparks</u>, 79 F.3d 372, 378 (4th Cir. 1996).  Applying these well-defined principles of

law to this case, SA Smith is entitled to absolute immunity as a witness testifying before the grand

---

[9] During questioning by the Court at the March 23, 2007 hearing, Plaintiff's counsel alluded to this point:

> THE COURT: This is a grand jury that didn't just meet on this one day and consider this one witness before it decided to return an indictment or a superseding indictment. It's a grand jury that met on a number of occasions; isn't that right?
>
> MR. FULLER: I believe so.
>
> THE COURT: And they heard from a number of other witnesses, right?
>
> MR. FULLER: Yes, I believe so.
>
> THE COURT: I don't know this, but would it be fair to assume that the other witnesses also described the actions of your client?
>
> MR. FULLER: I have no information about that, Your Honor.

Transcript 18:11-24.

jury. Id.

At the March 23, 2007 hearing, Collis attempted to argue that SA Smith was not entitled to absolute immunity because she was a "complaining witness" when she testified before the grand jury.[10] Collis asserted that because SA Smith had allegedly perjured herself before the grand jury, she was not entitled to absolute immunity. Transcript at 21:3-4.  Although it does not refer to the "complaining witness" doctrine by name, but instead refers to such claims as "Perjurer's Liability," the Fourth Circuit has held that Briscoe controls such situations. Lyles 79 F.3d at 378 ("[b]ecause the reasoning behind Briscoe is equally applicable to government officials' grand jury testimony, we hold that [the agent, in that case a postal inspector] enjoys absolute immunity from the Perjurer's Liability claim against him based on his testimony before the grand jury").  Therefore, applying Lyles, SA Smith is entitled to absolute immunity as a Government agent testifying as a witness before a grand jury.

Because the Court concludes that SA Smith did not violate Collis' constitutional rights, and in the alternative, that if she did she is entitled to absolute immunity under Lyles and Briscoe, the Court will grant the motion as to Defendant Smith.

## V.

On a final note, this Court must consider the public policy implications of this decision. Briscoe, 460 U.S. at 345.  While the Court in no way condones any behavior of prosecutors, FBI agents or other Government officials that lead to wrongful arrests, immunity defenses have been

---

[10] Collis referred to the doctrine, called the "complaining witness doctrine" in some circuits, whereby a person is not entitled to immunity if he or she "actively instigated or encouraged the prosecution of a plaintiff." Anthony v. Baker, 955 F.2d 1395, 1399 n.2 (10th Cir. 1992), Malley v. Briggs, 475 U.S. 334, 340 (1986), Keko v. Hingle, 318 F.3d 639, 643 (5th Cir. 2003), White v. Frank, 855 F.2d 956, 959 (2d Cir.1988).

crafted out of necessity, and a respect not for individual officials, but for the judicial process. <u>Kalina</u>, 522 U.S. at 127.  Further,  "[g]ranting immunity to official witnesses also prevents interference with the performance of their public duties by avoiding costly and time-consuming litigation." <u>Lyles</u>, 79 F.3d at 378. "[I]f defendant official[s] could be made to answer in court each time a disgruntled defendant charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." <u>Briscoe</u>, 460 U.S. at 343.

For the reasons stated herein, Defendants Simms and Smith's motion will be granted by separate order.

_____<br>
/s/

DATE:   7/19/07                                                     ROGER W. TITUS
                                                                   UNITED STATES DISTRICT JUDGE